UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HIGH DREAM MACHINERY LLC, | ) |
| | ) No. 24 CV 4758 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| DURAVANT LLC and nVENIA LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| DURAVANT LLC and nVENIA LLC, | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HIGH DREAM MACHINERY LLC, GENESIS PRODUCTS LLC f/k/a GENESIS PACKAGING MACHINERY LLC, and BRAD DUCORSKY, | ) |
| | ) November 10, 2025 |
| Counter-Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff sues Defendants for breach of contract, and Defendants countersue Plaintiff and its affiliates Genesis Products LLC and Brad Ducorsky for the same. Before the court is a rule to show cause this court entered against Defendants in connection with their conduct during an unsuccessful in-person settlement conference this court hosted in April 2025. For the following reasons, Defendants are ordered to reimburse Plaintiff in the amount of $15,325 in fees and $2,796.96 in travel expenses Plaintiff incurred in connection with the failed conference:

**Background**

Plaintiff filed this lawsuit in June 2024. (R. 1, Compl.) The case was then referred to this court in August 2024 for discovery supervision and to assist the parties with their settlement discussions as needed. (R. 14, Referral Order.) During written discovery, the parties jointly emailed the court on February 14, 2025, asking to schedule a settlement conference and to stay written discovery. A week later, the court held a preliminary settlement discussion to schedule and prepare for a settlement conference. (R. 62; R. 63.) During this off-the-record settlement discussion, the court asked whether Defendants would be willing to make a settlement payment to resolve this case—an inquiry this court made because of Defendants' counterclaims. The court recalls—and noted in its own record—that Defendants expressed a willingness to do so. Defendants' affirmation was a significant factor in the court's decision to stay written discovery and host the requested in-person settlement conference because it did not wish to engage in a settlement discussion where both sides demand payment. After the discussion, the court scheduled an in-person settlement conference for April 30, 2025, and ordered the parties to exchange settlement position statements. (R. 63.)

Parties exchanged detailed settlement statements. However, as Defendants correctly point out in their response to the rule to show cause, Plaintiff did not include a specific settlement demand in its statement but noted that its damages

2

total $18 million.[1] (R. 76 at 4.) Likewise, Defendants did not include a specific settlement offer but noted that their damages total at least $20.3 million. (Id.) After the exchange of statements, neither party contacted the court to cancel or reschedule the settlement conference.

The court hosted the scheduled settlement conference in its courtroom on April 30, 2025, at 10:00 a.m., but terminated the session at noon. Although the court spent two hours with the parties, Defendants' misconduct in response to Plaintiff's initial demand prevented them from exhausting their settlement efforts. After this court's private conference with Plaintiff's team, Plaintiff extended its initial demand of $14.25 million to Defendants. This demand represents a discount of 21% off Plaintiff's calculated damages. However, despite its prior representation to the court and Plaintiff, Defendants refused to make an offer and instead made a counterdemand that Plaintiff pay them $16.5 million, or 81% of their calculated damages on the counterclaims. This counterdemand surprised both this court and Plaintiff and brought the negotiation to an abrupt halt, requiring the court to terminate the conference prematurely.

Because the court questioned whether Defendants engaged in bad faith negotiation, it entered a rule-to-show-cause order directing them to explain "why they should not be held responsible for some of the fees and costs Plaintiff incurred

---

[1] To protect the private nature of the parties' negotiation, this court took care not to reveal the amounts the parties included in their confidential settlement statements or demand and offer amounts they exchanged during the settlement conference in its rule-to-show-cause order, (R. 74), but the court includes them here now because Defendants disclosed the amounts in their submission, (R. 76 at 5), and Plaintiff did not move to redact or seal the submission.

3

in preparing and attending [the April 2025] settlement conference." (R. 74.) Defendants timely filed their explanation in response to the rule to show cause, (R. 76), and Plaintiff commented on their explanation, (R. 85). Defendants do not dispute the events described in the rule-to-show-cause order but blame the premature termination of the settlement conference on Plaintiff and the court. Defendants say Plaintiff is primarily to blame because Plaintiff failed to extend a reasonable settlement demand, which was a condition precedent for Defendants engaging in the settlement discussion. (R. 76 at 5 ("Plaintiff reneged on its promise to provide a reasonable demand.").) They add that "Defendants fully expected the parties to spend the remainder of the day decreasing their demands," (id.)—which is exactly what this court wanted to avoid. Defendants also blame this court because they say it neglected to enforce the requirement on Plaintiff that its settlement statement include a specific demand.[2]

Plaintiff responds to Defendants' explanation and argues that it was their bad faith conduct that spoiled the settlement conference and brought it to an abrupt end. Plaintiff also includes certain fee and expense information and seeks to recover a total of $87,069.00 in fees and $4,013.15 in travel expenses. While the

---

[2] Defendants also attribute certain comments this court allegedly made during the confidential session with them during the April 2025 conference and use quotation marks around those supposed comments. This court will not haggle with Defendants over the accuracy of the quotes as it is not warranted here but admonishes the attorneys that when the court's comments must be included in any briefing, the better practice is to include them without quotation marks to err on the side of caution that they may not be accurate, unless they can cite to a transcript.

4

court finds that Plaintiff is entitled to some fees and expenses, the amount Plaintiff seeks is too high.

## Analysis

Defendants' explanation lacks credibility because they chose not to take any steps to ensure that they had a "reasonable demand" before meeting to discuss settlement. Imposing sanctions against a litigant under the court's inherent authority is warranted where the litigant "'willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 956 (7th Cir. 2024) (quoting *Fuery v. City of Chi.*, 900 F.3d 450, 463 (7th Cir. 2018)). Under the circumstances of this case, this court finds that Defendants engaged in bad faith conduct during the April 2025 in-person settlement conference, causing Plaintiff to incur unnecessary expenses and attorney fees.

**A.     Bad Faith Conduct**

Defendants' exercise of poor judgment during the April 2025 settlement conference caused everyone to waste time and resources—including the court having to address the fallout. Parties are not obligated to settle their disputes or engage in settlement conferences with the court's assistance, but they must not engage in bad faith negotiation that is counterproductive to resolving disputes once they choose to discuss settlement. In litigation, parties have the right to fiercely advocate for their respective positions and freely joust within the bounds of the law. But when they step into a settlement conference, they must assume the role

5

of diplomats rather than combatants. As such, to secure a successful resolution, a degree of cooperation is crucial.

Many litigants can resolve their cases on their own. But when litigants require the court's assistance, courts typically require the parties to submit and exchange position statements so that the parties and the court can be better informed about the issues before the conference. For that reason, this court's standing order directs that "Plaintiff must submit a statement to Defendant describing the nature of the action, the theory of liability, itemization of damages, and Plaintiff's settlement demand, including an explanation for the demand. Defendant must submit a statement to Plaintiff describing the theory of defense and Defendant's settlement offer, including an explanation for the offer." (See https://www.ilnd.uscourts.gov/judge_display.php? LastName=Kim, "Settlement Conferences.") Here, both sides submitted detailed and well-prepared position statements allowing the court to understand the fundamental disagreements between the parties and putting the court in a better position to help the parties resolve their differences. But the parties squandered this opportunity at the settlement conference.

Defendants do not offer good cause to avoid sanctions. First, Defendants say that the settlement conference failed in part because the court neglected to enforce its own standing order requiring Plaintiff to include a settlement demand. It is true that Plaintiff did not include a demand amount, and the court did not order Plaintiff to amend its statement. However, nothing prevented Defendants from contacting

the court about the need for a specific demand considering Defendants' position that a "reasonable demand" was a condition precedent to engaging in a settlement conference. (R. 76 at 4.) Instead, Defendants stated in their own position statement that they "remain[] willing to discuss settlement." (Defs.' April 4, 2025 Settlement Position Stmt. at 3.) Defendants could have moved the court to compel Plaintiff to specify its initial demand or contacted Plaintiff before the April 2025 conference reminding it of its obligation to extend a "reasonable demand."

Second, Defendants argue that their "initial demand [] was in line with Plaintiff's unreasonable demand." (R. 76 at 6.) In other words, because Plaintiff's initial demand was unreasonable, it warranted an unreasonable response. This tracks with the court's concern raised in the rule-to-show-cause order. The flaw in this argument is that almost all initial demands and offers are perceived as unreasonable by the opposing side. That is the nature of negotiation. Despite what they perceive to be unreasonable, most defendants still make a good faith effort to engage with a demand that moves the settlement process forward. Similarly, most plaintiffs treat initial settlement offers as unreasonable throw-away numbers, but they nonetheless reduce their demands to encourage a more generous offer. The goal at a settlement conference is to use each settlement response to gain traction, build momentum, and to move closer to settlement.

Here, Defendants took a decidedly puerile approach—they chose to irritate and annoy the other side, rather than to invite engagement. They also impaired their credibility with this court. Defendants knew they had represented to the court

7

and Plaintiff that they would make the settlement payment. Yet, they decided to respond to what they perceived to be an "unreasonable" demand with one they knew was unreasonable—for Plaintiff to pay them $16.5 million—ensuring no value could be gained from the meeting. This court will not condone this bad faith practice sabotaging the conference.

**B.  Reimbursement Amount**

That said, Plaintiff is not entitled to recover $87,069 in fees and $4,013.15 from Defendants. Not everything is lost because of Defendants' bad faith conduct. Engaging in formal settlement discussions can be helpful for the parties and the court even if the parties ultimately fail to reach an agreement. The process gives litigants a valuable opportunity to pause and reflect on their cases. The benefits include forcing the parties to inventory their own evidence, identify evidence they still need to gather, learn more about the opposing side's arguments, and learn what the court thinks of various arguments and pieces of evidence. This process draws focus on the real disputes in the case and can also help the court better understand the disputed issues, which may assist the court when ruling on discovery motions.

When the court entered its rule-to-show-cause order, it directed Plaintiff to file a response to Defendants' explanation "along with an itemization of fees and costs incurred in connection with" reviewing Defendants' April 4, 2025 settlement

8

position statement,[3] preparing for and attending the April 30, 2025 settlement conference, and preparing its response to Defendants' rule-to-show-cause explanation. (See R. 74.) This court also noted in the order that it "is not inclined to order reimbursement of fees for attorneys who [were not] attorneys of record if it decides to sanction Defendants." (Id.)

Having reviewed Plaintiff's Appendix A, (R. 85 at 8), Attorney John C. Lynch's and Brad Ducorsky's declarations, and the exhibits attached to the declarations, this court finds that Plaintiff is entitled to recover $15,325 in fees and $2,796.96 in travel expenses. To arrive at the total travel expense amount, this court reviewed the amounts Lynch and Ducorsky submitted and the documents supporting them. To arrive at the total fee amount, the court first eliminated the fees for Attorneys Elizabeth H. Andrews, Courtney T. Hitchcock, Anna Lee, and David Newman from consideration because they were not attorneys of record as of April 30, 2025. Second, the court eliminated the fees for Paralegal Massiel Ibarra because Newman was not an attorney of record when she supported his work. Third, the court reviewed the time entries for Lynch and Edwards starting on April 4, 2025, relating to reviewing Defendants' settlement statement ("A"), preparing for the settlement conference ("B"), appearing and participating in the settlement conference ("C"), and preparing Plaintiff's response to Defendants' explanation ("D"). Based on this court's review of their time entries, the following table shows

---

[3] This court does not presume that Plaintiff learned anything new from reviewing Defendants' settlement position statement but presumes that Plaintiff did review to be prepared to answer this court's questions regarding the same.

9

the corresponding number of hours for tasks Lynch and Edwards performed in categories A through D:

| Attorney/Paralegal | Hourly Rate | A | B | C | D | Total |
|---|---|---|---|---|---|---|
| John C. Lynch | $575 | 3.2 | 8.2 | 8 | 2.5 | $12,592.50 |
| Erin E. Edwards | $400 | | 0.7 | 2.9 | 2.5 | $2,440 |
| Alicia M. Rountree | $225 | | 1.3 | | | $292.50 |
| **Total** | | | | | | $15,325 |

As such, the court finds that Plaintiff is entitled to recover $15,325 in fees and $2,796.96 in travel expenses.

## Conclusion

For the foregoing reasons, this court finds Defendants failed to engage in good faith settlement efforts on April 30, 2025, causing the premature termination of the conference and Plaintiff to unnecessarily incur $15,325 in fees and $2,796.96 in travel expenses.

ENTER:

_____
Young B. Kim
United States Magistrate Judge

10